## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 24-cv-00452-JFJ |
| 1. UROLOGIC SPECIALISTS OF OKLAHOMA, INC., | ) ) ) | |
| Defendant. | ) ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

## Nature of the Action

This is an action under the Pregnant Workers Fairness Act ("PWFA"), Title I of the Americans with Disabilities Act of 1990 ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices because of pregnancy and disability and to provide appropriate relief to Charging Party, Juliann Walling ("Walling"). As alleged below, Plaintiff, Equal Employment Opportunity Commission (the "EEOC" or "Commission"), alleges that Defendant, Urologic Specialists of Oklahoma, Inc. ("Urologic Specialists"), violated the PWFA and the ADA when it refused to accommodate Walling's pregnancy-related limitations, forced Walling to take unpaid leave, refused to provide her lactation breaks following the birth of her child, and terminated her.

## Jurisdiction and Venue

1.      The Court has jurisdiction under 28 U.S.C. §§ 451, 1331, 1337, 1343, 1345, and 42 U.S.C. §§ 2000e-5(f)(3), 2000gg-2(a)(1).

2.      The EEOC is authorized to institute this action under Section 104(a) of the PWFA, 42 U.S.C. § 2000gg-2(a), and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporate by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and under Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Oklahoma.

## Parties

4.      Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of the PWFA and Title I of the ADA.

5.      Defendant Urologic Specialists of Oklahoma, Inc. is an Oklahoma Professional Corporation that, at all relevant times, has been continuously doing business in Tulsa, Oklahoma, and has continuously had at least 15 employees.

2

6.      Defendant Urologic Specialists has been an employer engaged in an industry affecting commerce at all relevant times under Section 102(2)(B)(i) of the PWFA, 42 U.S.C. § 2000gg(2)(B)(i), and Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

7.      Defendant Urologic Specialists has been a covered entity at all relevant times under Section 102(2) of the PWFA, 42 U.S.C. § 2000gg(2), and Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## Administrative Procedures

8.       More than thirty days prior to the filing of this lawsuit, Juliann Walling filed a Charge of Discrimination with the Commission alleging that Urologic Specialists violated the PWFA and the ADA.

9.      On July 11, 2024, the Commission issued to Urologic Specialists a Letter of Determination that found reasonable cause to believe that the PWFA and ADA were violated and that invited Urologic Specialists to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10.     Thereafter, the Commission communicated with Urologic Specialists to secure a conciliation agreement.

11.     On August 29, 2024, the Commission issued to Urologic Specialists a Notice of Conciliation Failure that advised Urologic Specialists

that the Commission was unable to secure from Urologic Specialists a conciliation agreement acceptable to the Commission.

12.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## Statement of Facts

13.    Walling was employed as a medical assistant for Urologic Specialists from on or about January 25, 2023, until on or about September 20, 2023, when Urologic Specialists terminated her.

14.    Urologic Specialists is a medical practice with approximately 21 physicians working out of five clinics in Eastern Oklahoma, Western Arkansas, and Southwest Missouri.

15.    On January 25, 2023, Urologic Specialists hired Walling to work as a full-time Medical Assistant at its medical clinic in Tulsa, Oklahoma.

16.    Medical assistant duties include stocking patient rooms, rooming patients, taking histories and medications, taking patient vitals, recording electronic medical records, and assisting the assigned provider / physician in room with treatments, blood draws, urine samples, prepping medication / injections, and preparing for procedures.

17.    Urologic Specialists requires medical assistants to be on their feet 80-95% of the day and does not allow medical assistants to complete any of their duties in a sitting position.

4

18.     Urologic Specialists also does not guarantee breaks for medical assistants.

19.     Instead, medical assistants are only permitted to take lunch and other breaks if the physicians allow breaks based on patient schedules.

20.     On or about February 3, 2023, Walling told Urologic Specialists that she was pregnant.

21.     By mid-March 2023, Walling began experiencing substantial swelling, pain, and discomfort in her feet, legs, and abdomen.

22.     Around March 15, 2023, Walling's physician advised that she needed to periodically sit, take short breaks to eat or drink, and occasionally prop up her feet for a short time if the swelling and pain did not subside.

23.     Walling told Urologic Specialists about her doctor's instructions, but Urologic Specialists would not provide these accommodations.

24.     On March 27, 2023, Urologic Specialists met with Walling for a "Coaching Session" regarding her "multiple health issues related to pregnancy, needing to sit down frequently, … not helping on [March 22], [and] missing work from over-doing it the day before."

25.     During the coaching session, Walling told Urologic Specialists that she could do her job if she could either sit and rest while logging patient data on her laptop between patients or, alternatively, could take a full 30-minute lunch break.

5

26.     Urologic Specialists told Walling that sitting and eating were not part of her job description, that medical assistants were not guaranteed lunch breaks, and that she would be sent home if she needed to sit down at any point while at work.

27.     Walling continued working without taking breaks or sitting, resulting in even more severe swelling.

28.     Because her body required time to recuperate after her shifts, Walling was sometimes unable to go to work and incurred a few unexcused absences from April 2023 to June 2023.

29.     Specifically, starting in early April 2023, Walling began developing severe swelling, pain, and discomfort in her feet, legs, and abdomen that substantially limited her ability to stand and walk.

30.     The limitations were severe enough that Walling was sometimes unable to go to work.

31.     Walling provided Urologic Specialists with doctor's notes excusing her from work for her absences.

32.     On April 6, 2023, Walling provided Urologic Specialists a doctor's note excusing her from work April 5-7, 2023, and stating that, when working, she should be allowed to sit and to elevate her feet.

33.     On April 7, 2023, Walling provided Urologic Specialists another doctor's note placing her off work until April 10, 2023.

34.     On May 2, 2023, Urologic Specialists reminded Walling that she was not permitted any accommodations, stating in a text message that Walling was expected to stand during clinic "especially if there are multiple providers in and they need somewhere to sit," which posed a serious threat to the health of her pregnancy.

35.     On May 11, 2023, Walling submitted another doctor's note stating that she needed light duty work with no heavy lifting, no strenuous activity, and the ability to rest, sit, take breaks, and hydrate as needed.

36.     Despite this note, Urologic Specialists continued to deny Walling breaks or the ability to sit.

37.     Walling continued to have physical complications related to her inability to get off her feet at work.

38.     Because of these complications related to her pregnancy, Walling submitted a doctor's note on May 24, 2023, stating she needed to be off work through May 26.

39.     On June 1, 2023, Walling submitted another doctor's note reiterating her need for light duty, no heavy lifting, and the ability to sit, take breaks, and hydrate as needed.

40.     Urologic Specialists's managers told her again that medical assistants must stand 90-100% of the day due to the job responsibilities and that she could sit if there was time.

7

41.     Urologic Specialists further said Walling could take lunch breaks only if her assigned provider also took a lunch break.

42.     On or about June 27, 2023, shortly after the PWFA went into effect, Walling again asked Urologic Specialists for a reasonable accommodation.

43.     Specifically, Walling said that she wished to continue working and would be interested in either a three-day-per-week schedule or reduced hours.

44.     Urologic Specialists refused to allow Walling to work part-time as an accommodation.

45.     Urologic Specialists then placed Walling on unpaid leave.

46.     In addition, in July 2023, Walling's doctor determined she had placental insufficiency, a physical impairment that substantially limited her reproductive function.

47.     Around July 10, 2023, Walling's doctor determined her baby was not properly growing due to a lack of nutrients caused by placental insufficiency.

48.     On or about July 11, 2023, the Administrator / HR Director called Walling regarding her unemployment claim and accused her of not wanting to work and said she was just trying to get money.

8

49.     Walling again explained that she preferred to work and could do so if she could sit while charting between patients or have a 30-minute lunch break.

50.     The Administrator / HR Director told Walling that the ability to sit or eat depended on the physician in charge and whether someone could cover her during a break.

51.     Walling asked the Administrator / HR Director if he was aware of the PWFA and that it requires pregnancy-related accommodations.

52.     The Administrator / HR Director said he knew nothing about the PWFA and that he would just document that Walling was unable to complete her duties.

53.     Walling insisted she could perform her duties with reasonable accommodation, but the Administrator / HR Director replied that Urologic Specialists had a business to run and told her that she was being placed on unpaid leave and could reapply for an open position, if one was available, after her baby was born.

54.     Thereafter, Walling was on unpaid leave.

55.     On August 10, 2023, Walling delivered her baby early at 37 weeks and weighing 4.9 pounds due to her pregnancy complications, including placental insufficiency.

56.     On September 7, 2023, Walling emailed Urologic Specialists and told them she was ready to return to work.

57.     On September 13, 2023, the Administrator / HR Director emailed Walling and told her that her position was still open and that she could return to work.

58.     The Administrator / HR Director also asked Walling to report to work on September 18, 2023, with a doctor's release.

59.     Before returning to work, Walling asked Urologic Specialists whether she could take a 30-minute break if she worked six or more hours and whether it would provide her a place to take lactation breaks every two hours.

60.     The Administrator / HR Director responded on September 15, 2023, and stated that Urologic Specialists could provide an available consult room or office for her to use for lactation but refused to ensure she would be provided breaks to do so.

61.     Instead, Urologic Specialists told Walling that she would have to coordinate times and locations with her supervisors and her assigned physician each day, that breaks during clinic hours could not be guaranteed, but they would try to accommodate when possible.

62.     Based on Urologic Specialists's repeated refusals to provide accommodations during and after her pregnancy, Walling was concerned that

10

if she returned to work, Urologic Specialists would not provide necessary accommodations, causing her additional physical and stress-related complications.

63.     Walling also sensed that the Administrator / HR Director did not want her to return to work given his prior accusations related to her unemployment claim and his refusal to state that she would be permitted time to pump.

64.     Walling was not able to return to work without knowing she would be permitted breaks for lactation.

65.     Urologic Specialists formally terminated Walling's employment on September 20, 2023.

## Statement of Claims

### Count I
### Failure to Accommodate
### Pregnant Workers Fairness Act

66.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

67.     Since at least June 27, 2023, Urologic Specialists has engaged in unlawful employment practices at its medical facility in Tulsa, Oklahoma, in violation of the PWFA, 42 U.S.C. § 2000gg-1(1).

68.     Specifically, Urologic Specialists did not make reasonable accommodations to the known limitations related to Walling's pregnancy, childbirth, or related medical conditions.

69.     Walling was a qualified employee under the PWFA because she was an employee who, with reasonable accommodation, could perform the essential functions of her job as medical assistant.

70.     Alternatively, Walling was a qualified employee under the PWFA because any inability to perform any essential job functions of her job was temporary, could be performed in the near future, and her inability to perform could be reasonably accommodated.

71.     Walling had a physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions, including substantial swelling, pain, and discomfort in her feet, legs, and abdomen; placental insufficiency; and the need to take lactation breaks to pump after the birth of her child.

72.     Walling communicated to Urologic Specialists's supervisory and Human Resources personnel about the physical or mental conditions related to, affected by, or arising out of her pregnancy, childbirth, or related medical conditions and her need for accommodations.

73.     Urologic Specialists did not make reasonable accommodations to the known limitations related to Walling's pregnancy, childbirth, or related

12

medical conditions after June 27, 2023, when it did not allow Walling the ability to sit, take breaks, work light duty, or work part-time during her pregnancy.

74.     Urologic Specialists did not make reasonable accommodations to the known limitations related to Walling's pregnancy, childbirth, or related medical conditions in September 2023 when it did not provide Walling breaks to pump when Walling attempted to return to work after the birth of her child.

75.     Urologic Specialists could have reasonably accommodated the known limitations related to Walling's pregnancy, childbirth, or related medical conditions without imposing an undue hardship on the operation of its business.

76.     Urologic Specialists intentionally engaged in these unlawful employment practices.

77.     Urologic Specialists acted with malice or with reckless indifference to Walling's federally protected rights.

78.     Walling has suffered damages because of Urologic Specialists's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## Count II
## Forced Leave
## Pregnant Workers Fairness Act

79.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

80.     Since at least June 27, 2023, Urologic Specialists has engaged in unlawful employment practices at its medical facility in Tulsa, Oklahoma, in violation of the PWFA, 42 U.S.C. § 2000gg-1(4).

81.     Specifically, Urologic Specialists required Walling to take leave when it could have provided another reasonable accommodation to the known limitations related to Walling's pregnancy, childbirth, or related medical conditions.

82.     Walling was a qualified employee under the PWFA because she was an employee who, with reasonable accommodation, could perform the essential functions of her job as medical assistant.

83.     Alternatively, Walling was a qualified employee under the PWFA because any inability to perform any essential job functions of her job was temporary, could be performed in the near future, and her inability to perform could be reasonably accommodated.

84.     Walling had a physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions, including substantial swelling, pain, and discomfort in her feet, legs, and

14

abdomen; placental insufficiency; and the need to take lactation breaks to pump after the birth of her child.

85. Walling communicated to Urologic Specialists's supervisory and Human Resources personnel about the physical or mental conditions related to, affected by, or arising out of her pregnancy, childbirth, or related medical conditions and her need for accommodations.

86. Urologic Specialists required Walling to take leave when it could have provided another reasonable accommodation to the known limitations related to Walling's pregnancy, childbirth, or related medical conditions, including the ability to sit, take breaks, work light duty, or work part-time.

87. Urologic Specialists intentionally engaged in these unlawful employment practices.

88. Urologic Specialists acted with malice or with reckless indifference to Walling's federally protected rights.

89. Walling has suffered damages because of Urologic Specialists's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## Count III
## Termination / Constructive Discharge
## <u>Pregnant Workers Fairness Act</u>

90.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

91.     Since at least June 27, 2023, Urologic Specialists has engaged in unlawful employment practices at its medical facility in Tulsa, Oklahoma, in violation of the PWFA, 42 U.S.C. § 2000gg-1(5).

92.     Specifically, Urologic Specialists denied Walling employment opportunities based on its need to make reasonable accommodation and took adverse action in the terms, conditions, or privileges of employment against Walling on account of Walling requesting or using a reasonable accommodation to the known limitations of her pregnancy, childbirth, or related medical conditions.

93.     Walling was a qualified employee under the PWFA because she was an employee who, with reasonable accommodation, could perform the essential functions of her job as medical assistant.

94.     Alternatively, Walling was a qualified employee under the PWFA because any inability to perform any essential job functions of her job was temporary, could be performed in the near future, and her inability to perform could be reasonably accommodated.

16

95.     Walling had a physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions, including substantial swelling, pain, and discomfort in her feet, legs, and abdomen; placental insufficiency; and the need to take lactation breaks to pump after the birth of her child.

96.     Walling communicated to Urologic Specialists's supervisory and Human Resources personnel about the physical or mental conditions related to, affected by, or arising out of her pregnancy, childbirth, or related medical conditions and her need for accommodations.

97.     Walling requested reasonable accommodations to the known limitations related to her pregnancy, childbirth, or related medical conditions, including the need to sit, take breaks, work light duty, or work part-time during her pregnancy; and the need to take lactation breaks to pump following the birth of her child.

98.     Urologic Specialists did not make reasonable accommodations to the known limitations related to Walling's pregnancy, childbirth, or related medical conditions.

99.     Urologic Specialists took adverse action against Walling when it terminated her employment in September 2023.

100.   Alternatively, Urologic Specialists took adverse action against Walling when it constructively discharged her employment in September 2023.

101.   Urologic Specialists created a working environment so intolerable that a reasonable person in Walling's situation would have felt compelled to resign because Urologic Specialists did not provide Walling lactation breaks to pump following the birth of her child.

102.   Urologic Specialists intentionally engaged in these unlawful employment practices.

103.   Urologic Specialists acted with malice or with reckless indifference to Walling's federally protected rights.

104.   Walling has suffered damages because of Urologic Specialists's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**Count IV**
**Failure to Accommodate**
**<u>Americans with Disabilities Act</u>**

105.   Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

18

106.   Since at least March 15, 2023, Urologic Specialists has engaged in unlawful employment practices at its medical facility in Tulsa, Oklahoma, in violation of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A).

107.   Walling is a qualified individual with one or more disabilities under the ADA, 42 U.S.C. §§ 12102 and 12111(8).

108.   Walling was a qualified individual under the ADA because she was an employee who, with reasonable accommodation, could perform the essential functions of her job as medical assistant.

109.   During her pregnancy, Walling experienced severe swelling of her feet, which substantially limited her ability to stand and walk, and developed placental insufficiency, which interfered with her ability to provide sufficient nutrients to her unborn child and substantially limits reproductive function.

110.   Walling requested that Urologic Specialists provide reasonable accommodations for her disabilities, but Urologic refused to provide any reasonable accommodation, in violation of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A).

111.   Urologic Specialists could have reasonably accommodated Walling's disabilities without imposing an undue hardship on its business operations by allowing her to sit for a portion of her day, take short breaks, including to eat lunch, or work part-time.

19

112.   The effect of these practices has been to deprive Walling of equal employment opportunities and otherwise adversely affect her status as an employee because of her pregnancy-related disabilities.

113.   Urologic Specialists intentionally engaged in these unlawful employment practices.

114.   Urologic Specialists acted with malice or with reckless indifference to Walling's federally protected rights.

115.   Walling has suffered damages because of Urologic Specialists's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## **Prayer for Relief**

The Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Urologic Specialists, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from denying reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of qualified employees.

B.   Grant a permanent injunction enjoining Urologic Specialists, its officers, agents, servants, employees, attorneys, and all persons in active

20

concert or participation with it, from requiring qualified employees to take leave, whether paid or unpaid, if another reasonable accommodation can be provided to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee.

C.      Grant a permanent injunction enjoining Urologic Specialists, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from taking adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee.

D.      Grant a permanent injunction enjoining Urologic Specialists, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from denying reasonable accommodations to qualified individuals with disabilities.

E.      Order Urologic Specialists to institute and carry out policies, practices, and programs that provide equal employment opportunities for pregnant workers and qualified individuals with disabilities, and that eradicate the effects of its past and present unlawful employment practices.

F.      Order Urologic Specialists to make Walling whole by providing appropriate backpay, front pay, and lost benefits with prejudgment interest,

in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to training requirements, notice posting, and policy revisions.

G.      Order Urologic Specialists to make Walling whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to debt incurred from moving expenses, transportation costs, job searches, and other expenses, in amounts to be determined at trial.

H.      Order Urologic Specialists to make Walling whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional distress, pain and suffering, anxiety, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

I.      Order Urologic Specialists to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

J.      Grant such further relief as the Court deems necessary and proper in the public interest.

K.      Award the Commission its costs of this action.

## Jury Trial Demand

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN
Regional Attorney

LAUREN W. JOHNSTON
Assistant Regional Attorney

s/ Joshua C. Stockton
Joshua C. Stockton, OBA # 21833
Trial Attorney
Equal Employment Opportunity
Commission
Oklahoma Area Office
215 Dean A. McGee, Suite 524
Oklahoma City, OK 73102
(405) 666-0387
joshua.stockton@eeoc.gov

**ATTORNEYS FOR PLAINTIFF
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**